No. 03-836

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 288

STATE OF MONTANA,

Plaintiff and Respondent,

v.

TODD JOHN MARTIN,

Defendant and Appellant.

APPEAL FROM:     District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DC-03-0112,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gary E. Wilcox, Michael Law Firm, Billings, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Pamela P. Collins,
Assistant Attorney General, Helena, Montana

Dennis Paxinos, Yellowstone County Attorney; Christopher Morris, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  July 14, 2004

Decided:  October 19, 2004

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     Todd John Martin (Martin) appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, entered October 14, 2003, denying Martin's motion to withdraw his guilty plea. We affirm.

¶2     We address the following issues on appeal:

¶3     1. Did the District Court err in denying Martin's motion to withdraw his guilty plea?

¶4     2. Did Martin receive effective assistance of counsel?

## BACKGROUND

¶5     On February 9, 2003, Martin's neighbor, Errol Fisher (Fisher), phoned 911 and reported Martin had stabbed a female the previous night and that Martin would not let her leave the apartment to seek medical treatment. When Billings police officers arrived at the apartment building, they located the victim, Carolyn Smith (Smith), in her bedroom. When asked if she had been stabbed, she lifted up her shirt to reveal blood and what appeared to be a wound on her left upper back. Officers found Martin in the hallway of the apartment building. A black folding knife, which appeared to have blood on the blade, was located in Martin's front right pocket. A small plastic bag of what appeared to be marijuana was also removed from Martin's pocket.

¶6     Officers transported Martin to the Yellowstone County Detention Center, where officers collected Martin's pants and slippers because they appeared to have blood on them. Once read his Miranda rights, Martin stated Smith had been stabbed outside of the residence, he was not present during the incident, and Smith had given him the knife when she returned to the apartment.

¶7 Fisher provided a statement to police on February 9, 2003, stating that Martin told him he had stabbed Smith with a pocketknife, that Martin showed him how deep the knife went into Smith's body, and that Martin asked him not to call for assistance because Martin would go back to prison. Fisher gave a follow up statement to police on May 27, 2003.

¶8 On February 12, 2003, Martin was charged with assault with a weapon, a felony, in violation of § 45-5-213(1)(a), and criminal possession of dangerous drugs, a misdemeanor, in violation of § 45-9-102(2). On February 13, 2003, the State filed a notice of intent to have Martin designated a persistent felony offender, based on a 1996 conviction of partner family member assault.

¶9 On June 6, 2003, Martin moved to withdraw his plea of not guilty to the felony assault charge and enter a guilty plea. Following appropriate inquiry, the court accepted his plea. Martin accepted a plea agreement which provided he would be sentenced for five years to the Department of Corrections, with two years suspended, and the State would dismiss the persistent felony offender designation. Two days before the original sentencing date, a woman claiming to be Smith went to the Public Defender's Office and gave a statement that Martin was not the person who committed the assault.

¶10 On September 15, 2003, Martin filed a motion to withdraw his guilty plea. On October 8, 2003, a hearing on the motion was held. On October 14, 2003, the court issued its order denying Martin's motion to withdraw his guilty plea. On October 22, 2003, Martin was sentenced pursuant to the plea agreement. Martin now appeals from the court's denial of his motion to withdraw his guilty plea.

STANDARD OF REVIEW

3

¶11     We review a district court's denial of a defendant's motion to withdraw a guilty plea to determine whether the court abused its discretion. *State v. Schaff*, 1998 MT 104, ¶ 16, 288 Mont. 421, ¶ 16, 958 P.2d 682, ¶ 16; *State v. Enoch* (1994), 269 Mont. 8, 11, 887 P.2d 175, 177. No categorical standard exists as to how a district court must address a request to withdraw a guilty plea; rather, each case must be considered in light of its unique record. *Mallak v. State*, 2002 MT 35, ¶ 16, 308 Mont. 314, ¶ 16, 42 P.3d 794, ¶ 16.

DISCUSSION

¶12     **1. Did the District Court err in denying Martin's motion to withdraw his guilty plea?**

¶13     Section 46-16-105, MCA, provides that at any time before or after a judgment, the court may, for good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. This Court has established three factors to be considered when determining whether "good cause" under § 46-16-105, MCA, exists to permit the withdrawal of a guilty plea: 1) the adequacy of the district court's interrogation as to the defendant's understanding of his plea; 2) the promptness of the motion to withdraw the prior plea; and 3) the fact that the defendant's plea was apparently the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge. *State v. Graham*, 2002 MT 237, ¶ 16, 311 Mont. 500, ¶ 16, 57 P.3d 54, ¶ 16 (citing *Mallak*, ¶ 17; *State v. Knox*, 2001 MT 232, ¶ 11, 307 Mont. 1, ¶ 11, 36 P.3d 383, ¶ 11; *State v. Bowley* (1997), 282 Mont. 298, 304, 938 P.2d 592, 595). Consideration of the third factor is intended to prevent the parties to a plea agreement, either a defendant or the State, from escaping the obligations of the plea agreement after accepting its benefits. *Schaff*, ¶ 28.

4

¶14  On appeal, Martin does not dispute the first factor–the adequacy of the District Court's interrogation of him when he changed his plea.  The second factor is not in dispute because the timeliness of Martin's motion is not challenged.  Further, promptness of a motion, alone, does not outweigh the other two factors.  *State v. White*, 2004 MT 103, ¶ 18, 321 Mont. 45, ¶ 18, 88 P.3d 1258, ¶ 18 (quoting *State v. Keys*, 1999 MT 10,  ¶ 21, 293 Mont. 81, ¶ 21, 973 P.2d 812, ¶ 21).  Therefore, the only factor argued on appeal is the third.  In the District Court proceedings, Martin's counsel conceded this factor to the State, however, on appeal Martin contends this was not a concession, but merely an acknowledgment the State had a valid-sounding argument.

¶15  It has long been the rule in this Court that we will not fault a district court for a ruling in which the appellant acquiesced or participated in.  *State v. Gardner*, 2003 MT 338, ¶ 44, 318 Mont. 436, ¶ 44, 80 P.3d 1262, ¶ 44 (citing *In re Marriage of Smith* (1990), 242 Mont. 495, 501, 791 P.2d 1373, 1377).  Acquiescence in error takes away the right of objecting to it.  *Gardner*, ¶ 44 (citing *State v. LaDue*, 2001 MT 47, ¶ 23, 304 Mont. 288, ¶ 23, 20 P.3d 775, ¶ 23; § 1-3-207, MCA).

¶16  A review of the record reveals Martin's counsel did, in fact, concede this element to the State in the District Court proceedings.  Martin's acquiescence constitutes a waiver of his right to assert error regarding this factor on appeal.  Thus, we decline to consider it.

¶17  Last, Martin states the fundamental purpose in allowing a withdrawal of a plea is to prevent the possibility of convicting an innocent person.  *Knox*, ¶ 10 (citations omitted); *State v. Arledge* (1987), 228 Mont. 225, 232, 741 P.2d 781, 785.  He claims Smith's statement to the public defender exonerating Martin was reason enough for the District Court

to grant his motion. However, considering Smith did not testify at the hearing, the identity of the woman who made the statement to the public defender was not confirmed as Smith, the birth date she provided was not correct, and Fisher's statement to police incriminating Martin, we cannot say the District Court abused its discretion when it denied Martin's motion to withdraw his guilty plea.

¶18 **2. Did Martin receive effective assistance of counsel?**

¶19 Since this Court finds Martin is precluded from arguing on appeal the validity of the third "good cause" factor, Martin alternatively contends that his counsel was ineffective when he conceded the third "good cause" factor in the District Court proceedings and failed to preserve the issue for appeal.

¶20 The State argues Martin's counsel's performance cannot be deficient because the issue Martin claims he failed to raise lacks merit. The State contends the plea agreement in this case benefitted Martin and therefore satisfied the third "good cause" factor. Relying on our recent decision in *White*, where we stated that a plea agreement between a defendant and the State "is a contract which is subject to contract law standards," the State argues it was bound by the agreement from the moment it was entered into. *White*, ¶ 25 (citation omitted).

¶21 Martin does not dispute he received a benefit under the plea agreement, but contends at the time of the District Court's denial of his motion to withdraw his guilty plea, he had not yet received the benefit of the plea agreement because the misdemeanor charge had not been dropped, the persistent felony offender notice had not been withdrawn, and he had not been sentenced.

¶22 Montana has adopted the two-pronged test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, in determining whether a defendant received effective assistance of counsel. A defendant must show his counsel's performance was deficient and that this deficient performance prejudiced him. *State v. Osterloth*, 2000 MT 129, ¶ 30, 299 Mont. 517, ¶ 30, 1 P.3d 946, ¶ 30.

¶23 Martin's argument he had not received the benefit of the plea bargain at the time of the District Court's denial of his motion to withdraw his guilty plea is not persuasive. We have rejected similar arguments before, holding plea agreements are enforceable from the moment they are entered into with both sides receiving the benefit of their bargain from the moment of signing. *White*, ¶ 26; *Schaff*, ¶ 31. Martin accepted the benefits of the plea bargain immediately upon signing it June 6, 2003. Thus, the State established the third "good cause" factor.

¶24 Since the third "good cause" factor weighed in favor of the State, Martin's counsel did not err when he conceded it to the State in the District Court proceedings. A counsel's performance cannot be deficient when the issue counsel failed to raise lacks merit. *Osterloth*, ¶ 32; *State v. Hildreth* (1994), 267 Mont. 423, 433, 884 P.2d 771, 777. Martin's counsel's performance was not deficient; therefore, we hold Martin received effective assistance of counsel.

¶25 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ JIM RICE